UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 17-CR-131 (JDB) |
| | : | |
| v. | : | |
| | : | |
| DORENE BROWNE-LOUIS | : | Sentencing Date:  4/23/2018 |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this memorandum in aid of sentencing for Dorene Browne-Louis ("Browne-Louis").  As discussed below, **the Government recommends that the Court sentence the defendant to a fine of $1,000 and 180 days of incarceration, execution of sentence suspended ("ESS") as to all, with a period of two years' probation for Count 1 (Conspiracy to Unlawfully Disclose a Sexual Image).  The Government further recommends a fine of $25,000 and a sentence of two years' probation, with the condition of six months of home confinement, for Count 5 (Accessory After the Fact to Criminal Computer Access to a Protected Computer).  The Government recommends that the terms of probation run concurrently, but that the Court reserve the right to sentence the defendant to consecutive terms of imprisonment should she fail to successfully satisfy her probationary term.  The Government further recommends that the Court impose several special conditions of probation, which are discussed in detail *infra*.**  This sentence is consistent with the plea agreement reached by the parties and below the maximum sentence under the statutes of conviction.  The Government also has no objections to the Presentence Report ("PSR").  To assist the Court in determining whether to accept the guilty plea in this case

1

and the proposed sentence, the Government relies on the following points and authorities and any other points and authorities that may be cited at the sentencing hearing. The Government has also attached a victim-impact statement from Delegate S.P., one of the two victims in this case (*see* Attachment 1).[1]

### I. Factual Background

1.  U.S. House of Representatives Delegate S.P. ("Delegate S.P.") hired the defendant, Browne-Louise, in January of 2015. Her co-defendant, Juan McCullum ("McCullum"), was also a member of Delegate S.P.'s staff and had been employed in that capacity since September of 2013. The defendant and McCullum overlapped from January of 2015 to April of 2016 and became professional and personal friends, socializing both in and out of the office. At some point during her tenure in the office, Browne-Louis became frustrated and bitter; both she and McCullum believed that Delegate S.P. had mistreated them.

2.  On both March 22, 2016, and March 23, 2016, McCullum offered to assist Delegate S.P. in repairing her malfunctioning, personal iPhone. Delegate S.P. entrusted her phone (which was password protected) to McCullum for this purpose. The iPhone contained work-related communications, historical data, and personal images. The images included private and intimate nude photos and videos of Delegate S.P. and her husband, J.B.S. Without authorization, McCullum searched through the contents of the phone after it had been fixed and stole, among other things, nude images of Delegate S.P. and J.B.S., as well as sexual videos of Delegate S.P. (collectively, the "Nude Images and Video"). McCullum stole and copied the Nude Images and Video without Delegate S.P.'s permission or consent. When he returned the

---

[1] Should the Government receive additional victim impact statements, it will promptly provide them to the Court and the defense.

iPhone to Delegate S.P., he failed to disclose that he had used her password to search the phone and that he had taken material, including the Nude Images and Video, from the device.

3.  Browne-Louis left Delegate S.P.'s staff in April of 2016. After she left, Browne-Louis assisted McCullum in obtaining a new job as a Congressional staffer for another member of the House of Representatives. McCullum then left the employ of Delegate S.P. in June of 2016. After he left, McCullum continued to possess the Nude Images and Video that he had stolen from Delegate S.P.'s personal cellphone.

4.  Shortly after leaving Delegate S.P.'s staff, McCullum began a covert effort to disclose the Nude Images and Video to harm Delegate S.P. and negatively affect her re-election.[2] The first part of this effort was to open a fictitious email account that was used to distribute the images. McCullum was in regular and consistent contact with the defendant for the duration of the crime. For example, McCullum texted Browne-Louis within minutes of sending an initial email regarding Delegate S.P. to the Governor of the Virgin Islands that contained Nude Images

---

[2] Throughout 2016, Delegate S.P. was engaged in a primary race, with the primary election set for August 6, 2016. As part of his clandestine effort to thwart Delegate S.P.'s re-election, McCullum took a number of calculated steps to hide his identity and distribute these images in a way designed to cause the most harm to Delegate S.P. Among the steps taken by McCullum included:
  (1) On July 2, 2016, McCullum created a Hotmail email account ("Ricenville Hotmail Account") and a Google email account ("Ricenville Google Account") in the fictitious name of "Susan Ricenville."
  (2) Upon opening the account, McCullum sent emails (to which the Nude Images and Video attached) to a number of high-profile political persons in Delegate S.P.'s Congressional district who were also friends of Delegate S.P. The email list included the sitting Governor of Delegate S.P.'s district.
  (3) In the text of the emails, McCullum pretended to be a concerned female voter in Delegate S.P.'s district who was urging constituents not to vote for Delegate S.P. because of the images.
  (4) McCullum used an anonymizing VPN service toward the later period of time during which he was distributing images, which helped mask his own connection to the accounts at issue.

and Video.  Evidence suggests that the message from McCullum to the Governor of the Virgin Islands was undeliverable and consequently, bounced back to McCullum.  Legal-process returns indicate that on July 2, 2018, one of the email accounts that McCullum used had sent an email (with the Nude Images and Video attached) to the Governor of the Virgin Islands at the time.  Returns show that at 08:38 UTC, this email bounced back and was never delivered.  The forensics from the defendant's phone indicate that at 08:41 UTC – just three minutes later – McCullum texted the defendant that the email had bounced back, using the initials of the Governor of the Virgin Islands.  The forensics also reveal that this text message had been deleted by the user of the phone.  Subsequently, the defendant acknowledged that she attempted to delete (and did in fact delete) such text messages after the federal, criminal investigation began on July 6, 2016.  The defendant and McCullum also had a phone conversation lasting two minutes at 14:44 UTC on July 2, 2016 and approximately thirty minutes later, at 15:11 UTC, McCullum (using one of his masked email accounts) resent the initial email (with the Nude Images and Photos attached) to a different email address for the Governor of the Virgin Islands.  There were also calls made between the two on that date after the email had been sent.

5.      The defendant also asked McCullum to email her the Nude Images and Video, which he did on a number of occasions.  Forensics and legal-process returns show that the defendant corresponded with others, including McCullum, about obtaining a different email address for the Governor on or about July 8, 2016.  Forensics also show that on that date, the defendant corresponded with McCullum and received (from McCullum's email account) an email containing the Nude Images and Video.

6.      Moreover, in a deleted text message that was forensically recovered from the defendant's cellphone, McCullum (on a day he sent Nude Images and Video to Browne-Louis)

told Browne-Louis, "[s]omebody will pay for how we were treated." This text was subsequently deleted from the defendant's phone..

7. During the period of time during which McCullum distributed the Nude Images and Video, Browne-Louis also assisted the primary campaign of "Candidate X," who was Delegate S.P.'s main competition in the primary election. In communications on July 2, 2016, and July 3, 2016, the defendant communicated with a person ("Mr. A") who worked for the campaign of Candidate X. In these communications, Browne-Louis offered campaign advice to Candidate X. Browne-Louis was also in a romantic relationship with Mr. A at the time. On July 8, 2016, Browne-Louis distributed a sexual video of Delegate S.P. (that she received from McCullum) to Mr. A, who then distributed the video to a reporter based in Delegate S.P.'s Congressional district. The video was not published by the reporter.

8. On or about July 17, 2016, McCullum created a Facebook account using the fictitious name "Susan Ricenville" (the "Ricenville Facebook account"). Between July 17, 2016, and July 21, 2016, McCullum used the Ricenville Facebook account to pretend to be a local resident ("Susan Ricenville") from Delegate S.P.'s district and "friended" numerous Facebook accounts of politicians in Delegate S.P.'s Congressional district and politicians who were competing with Delegate S.P. in the primary and general elections. During this aspect of the scheme, defendant Browne-Louis provided McCullum with confidential documents dealing with Delegate S.P.'s campaign. These documents identified key supporters of Delegate S.P. in her Congressional district. Consequently, McCullum "friended" some of these persons (and persons connected to these persons) using the Ricenville Facebook account. McCullum also uploaded several of the Nude Images and Videos to the Ricenville Facebook account and used the account to widely distribute several of the Nude Images and Videos via Facebook private messages and

posts. While sending these images privately (before the images were reported in the media), McCullum told Browne-Louis about the Ricenville Facebook account and his activities on the account. The two engaged in the following exchange:

|  |  |
|---|---|
| **Browne-Louis:** | Awww, but no name. |
| **McCullum:** | Yeah – it's coming…. All brewing |
| **Browne-Louis:** | Awww. |
| **McCullum:** | Susan Ricenville has made many a friends on FB [see no evil monkey emoji] [speak no evil emoji] |
| **Brown-Louis:** | [hear no evil monkey emoji] |
| **McCullum:** | Lol |

McCullum also distributed some of the nude Images and Video (along with public comments supporting the defeat of Delegate S.P. and urging the public to disseminate the Nude Images and Video further) on a public Facebook community page that was viewable by thousands of residents in Delegate S.P.'s Congressional district. Eventually, the scheme was effective and the Nude Images and Video were widely distributed; some media outlets even published the Nude Images and Video to the public.

9. McCullum and Browne-Louis succeeded in hurting and humiliating Delegate S.P., her husband ("J.B.S."), and their family. *See* Attachment 1. And though the defendant did not, by her own hand, steal and widely distribute these images, she played an integral role in the process, enabling McCullum to distribute the images, engaging in dialogue and banter with McCullum, and finally, providing support and contacts for McCullum as he engaged in his criminal activity. The effect was even more pronounced on Delegate S.P.'s children who were also forced to handle the issue with their peers and the public. It should therefore be expected that the victim feel the profound sense of betrayal that she does. *See* Attachment 1. Notably, as the disclosures were occurring, Browne-Louis maintained her relationship with Delegate S.P. and pretended to support the Delegate and her family despite having true knowledge about what was happening and why. This direct deceit of the victim and her family is particularly galling

given the impact she knew the disclosures were having on Delegate S.P. and her family in the middle of contested election. The harm caused by this deceit is described poignantly in Delegate S.P.'s impact statement.

10. On or about July 6, 2016, federal law-enforcement officers initiated a federal, criminal investigation, including a federal grand jury investigation into this matter. Law enforcement identified McCullum and Browne-Louis after a significant, forensic-based investigation revealed the online digital fingerprints of the defendants.[3] On November 9, 2016, federal law-enforcement agents interviewed Browne-Louis at her residence. At the time of interview investigators were aware that she was close and connected to McCullum, but were not fully aware of her criminal involvement. During the interview, defendant Browne-Louis claimed that she received the email with one photo of the victim topless from a "Susan Somebody." She also told law enforcement that she did not know who had this person was or who was behind the distribution of the images. She claimed that once she viewed the photo, she contacted Delegate S.P. and recalls that she may have forwarded the message to another friend of the victim. The defendant also claimed to have initially heard of the leak from people in the Virgin Islands who called her believing she still worked for the victim. Based on the computer forensics, this information was patently false. Just months earlier, the defendant and McCullum were in clear and consistent communication in a concerted attempt to embarrass and humiliate the victim and her family.

---

[3] In addition to revealing electronic links between McCullum and the fictitious accounts, the investigation uncovered multiple Nude Images and Videos, as well as communications with the defendant, on McCullum's home computer and personal cellphone. The investigation also uncovered deleted messages and emails from the defendant's cellphone.

11.     As part of the investigation, federal law-enforcement agents interviewed Browne-Louis on multiple occasions after the initial November 9, 2016, interview.  During these interviews, Browne-Louis maintained numerous false and misleading statements about her knowledge of McCullum's activities with regard to Delegate S.P. and the Nude Images and Video.  Browne-Louis also falsely reported to federal law-enforcement officers that she did not know that McCullum was involved in the distribution of images related to Delegate S.P. and that she did not delete messages from her cellphone related to McCullum or Delegate S.P.  Both of these assertions were false.  Authorities discovered that the defendant had received numerous text messages, phone calls, and emails from McCullum between July 2, 2016, and July 22, 2016.  These communications corresponded with McCullum's use of the Ricenville Hotmail and Facebook accounts.  After November 22, 2016, authorities also obtained via forensic examination, certain incriminating text messages on the defendant's cellphone that related to McCullum's distribution of images related to Delegate S.P., and confirmed that Browne-Louis had deleted these messages.  The deleted correspondences included text messages between the defendant and McCullum discussing the Nude Images and Videos taken from Delegate S.P.'s iPhone.

12.     On or about November 22, 2016, Browne-Louis was again interviewed by law enforcement and prosecutors, and then testified before a federal grand jury empaneled in the District of Columbia.  In her witness conference, and during her testimony, the defendant did not retract the prior false statements she had made to law enforcement regarding McCullum and the Nude Images and Videos; rather, the defendant provided false, incomplete, and misleading testimony to investigators and the federal grand jury about McCullum and her knowledge of his distribution of the Nude Images and Videos.  In her statements, Browne-Louis falsely stated that

she did not have discussions with McCullum about the leaked photos. The defendant also testified that McCullum never told her that he was in possession of the Nude Images and Video, that she did not know who Susan Ricenville was, and that McCullum never shared the Nude Images and Video with the defendant. Moreover, the defendant testified under oath that she had never discussed a desire on the part of either herself or McCullum (or both) to seek revenge for the way they had been treated. All of these statements were inconsistent with the truth and the significant email and text message evidence recovered Browne-Louis and McCullum's various accounts and devices. The combination of the numerous misrepresentations establishes that the defendant's statements were not a result of innocent confusion or a faulty memory – they were intentional and calculated, and illustrated that the defendant wanted to conceal her own involvement and her knowledge of McCullum's conduct and her involvement.

## II.     The Offenses of Conviction and the Plea Agreement

13. On January 23, 2018, before the Honorable Judge John D. Bates, the defendant pleaded guilty to the following offenses:

   a. COUNT ONE: Conspiracy to Disclose Sexual Images, in violation of 22 D.C. Code §§ 1805a and 3052;

   b. COUNT FIVE: Accessory After the Fact to Criminal Computer Access to a Protected Computer (Accessing to View), in violation of 18 U.S.C. §§ 3 and 1030(a)(2)(C).

14. The maximum penalties for Count One are:

   a. Imprisonment for not more than 180 days; and,

   b. The possibility of a fine up to $1,000; and,

      c. A term of supervised probation of up to five years.[4]

15. The maximum penalties for Count Five are:

      a. Imprisonment for not more than six months; and,

      b. A possible fine of up to $50,000 (or twice the pecuniary gain or loss of the offense); and,

      c. A term of supervised release of not more than 1 year, pursuant to 18 U.S.C. § 3583(b)(3);

      d. A term of probation not to exceed five years, pursuant to 18 U.S.C. § 3561(c)(2).[5]

16. The parties have acknowledged (and agree with the PSR writer) that no U.S. or D.C. Sentencing Guidelines apply to Count (1) of the Superseding Information because the D.C. Voluntary Sentencing Guidelines do not apply to misdemeanor offenses. The U.S. Sentencing Guidelines (2017) ("U.S.S.G.") also do not apply to Count (5) because Count (5) is a Class B Misdemeanor. *See* U.S.S.G. §1B1.9.

### III. Legal Background

17. Title 18, United States Code, Section 3553(a), provides the factors that the Court must consider in sentencing a defendant. These factors include:

    a. The nature and circumstances of the offense and the history and characteristics of the defendant;

    b. The need for the sentence imposed:
       i. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[4] There is an assessment imposed in the Superior Court for the District of Columbia. The assessment amount must be between $50 and $250 per misdemeanor and is payable to the Budget and Finance Office of the Superior Court.

[5] A special assessment of $50 per misdemeanor conviction to the Clerk of the United States District Court for the District of Columbia. A special assessment of $10 is mandatory.

      ii. To afford adequate deterrence to criminal conduct;
     iii. To protect the public from further crimes of the defendant; and,
     iv. To provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

  c. The kinds of sentences available;

  d. The kinds of sentence and the sentencing range established by the [United States] Sentencing Commission ["USSC"]. . . .;

  e. Any pertinent policy statement (A) issued by the [USSC]. . .;

  f. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and,

  g. The need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a). The Court must consider each of these factors; additionally, the Court can consider facts that are proven prior to and at sentencing.

    18. The burden to prove facts in support of a sentence is the preponderance-of-the-evidence standard. *United States v. Dorcely,* 454 F.3d 366, 371-372 (D.C. Cir. 2006); *United States v. Dozier,* 162 F.3d 120, 123 (D.C. Cir. 1998). This Court can determine a legal sentence based on all manner of information, including uncharged conduct and any other § 3553(a) factor. *See United States v. Watts*, 519 U.S. 148, 156-157 (1997) (*per curiam); accord Williams v. New York,* 337 U.S. 241, 246-47 (1949); *Wasman v. United States,* 468 U.S. 559, 564 (1984) (same); *see also Alleyne v. United States,* 570 U.S. 99, 116 (2013) (recognizing "the broad discretion of judges to select a sentence within the range authorized by law").

    **A.** **<u>Analysis of § 3553 Factors</u>**

    19. The government herein reviews the sentencing factors established in 18 U.S.C. §3553(a), and believes the proposed sentence is appropriate after taking into account these factors.

11

### 18 U.S.C. §§ 3553(a)(1), (a)(2)(A) – Nature and Seriousness of the Offense; Need for Just Punishment; and History and Characteristics of the Defendant

20. Here, the harm caused by the actions of the defendant and McCullum are uncontested. The two caused significant and extreme emotional pain to Delegate S.P., J.B.S., and their family. Not only did Delegate S.P. and J.B.S. have to face their friends, family, and constituents in the face of incredibly intimate and private images having been made public, they also had to explain both the images themselves and their publication to their young children. As one of the victims poignantly outlined in her victim-impact statement, "[t]he level of betrayal I feel from her is profound, is devastating and causes me now to be a person who trusts practically…no one….I feel humiliated and *exposed* all the time. They stole intimacy that was solely for my husband and tried to twist and make it ugly to the world." Attachment 1. Both of the defendants invaded the sanctity of the victims' homes, intimate relationships, and personal family lives, and in the process, they showed little to no empathy or concern for those who they harmed.

21. The harm caused is also significant because the defendants violated the trust of a person who gave them coveted employment and called them professional colleagues. While defendant Browne-Louis was not the person who unlawfully rifled through Delegate S.P.'s personal cellphone to steal private images and videos, she knew the extent of McCullum's activity, promoted it, and then lied repeatedly to Delegate S.P., law enforcement, and even the Grand Jury. Together, these two former staffers betrayed the trust and inviolability of the Delegate's privacy, accessed personal and work-related material and stole that private material for later use in a scheme to influence the democratic process.

22. Moreover, the defendants attempted to subvert a political election This conduct was done with malicious intent and significant effort and planning, which was timed to have maximum impact on the primary election (and thus to maximize the personal impact on Delegate S.P. professionally and personally, as well as J.B.S., and their family).

23. From a punitive perspective, defendant Browne-Louis was interviewed by law enforcement on multiple occasions, including after her arrest, and she testified before the Grand Jury. She gave false witness each time, and was given multiple opportunities to correct the record. She chose deceit. The defendant's decision to thwart the investigation and the Grand Jury assaulted a bedrock principle of our legal system, and her attempts to subvert our legal system must be punished. There is no question that the defendant engaged in a course of conduct specifically designed to hurt the victims personally and professionally, and that her actions here were willful and intentional. As the victim noted, "what happened [was] more than a prank, that the actions were crimes; that the perpetrators were trying to destroy me, ruin my life and place out in the universe awful things about my husband, about my children." Attachment 1. "These [we]re children that [the defendant] hugged, fed and spent time with, children I trusted her with." Attachment 1.

24. Despite this, the defendant's personal characteristics, work history, and (lack of) criminal history inure to her favor. The defendant has never been convicted of a crime, and the Government recognizes that some leniency may be appropriate under the circumstances – specifically, that her lack of a criminal history and violent characteristics are mitigating factors. Moreover, as noted above, the defendant has several children (including a young child), and her husband was recently killed. As such, the defendant is the primary caretaker of her children, which the Government believes carries significant weight and mitigates against a sentence which

includes a period of incarceration. Thus, the Government believes that a punishment that includes a significant period of home confinement (which would permit the defendant to provide care to her child while remaining employed) is appropriate here. The Government believes that the defendant has the potential for rehabilitation, and that she can return to being a law-abiding member of society.

### 18 U.S.C. §3553(a)(2)(B)- Deterring Others from Criminal Conduct

Defendant Browne-Louis played the role that many defendants do - she may have been the main actor distributing the material on the internet, but she was assisting the endeavor, and allowed it to happen. She also did not contact the police, and when law enforcement came to her door to talk to her about what she knew, she lied to them, and later, to the Grand Jury. Others who play such roles in future crimes need to be deterred and must be on notice that their conduct is unlawful and worthy of substantial punishment. The fine and home confinement aspects of the sentence will be the primary method by which this message will be sent. The significant special conditions of probation to which the defendant must adhere will also fulfill this function. To this end, the government proposes the following special conditions of probation:

    a.    The defendant will perform 250 hours of community service;

    b.    She will not use the internet to create or access fictitious e-mail or social-media accounts (*i.e.*, accounts not in the defendant's given name) without prior disclosure of the accounts to probation;

    c.    She will not use anonymizing applications, TOR software, or Virtual Private Network servers to access the internet without prior permission of probation;

    d.    She will not use the internet to threaten, harass, stalk, intimidate, or cyberstalk any person, including (but not limited to), Delegate S.P., J.B.S., members of their family, and Delegate S.P.'s staff;

    e.    She will have no contact (either directly or indirectly) with Delegate S.P., J.B.S., or their family;

    f.    She will abide by a physical stay away from Delegate S.P., J.B.S., and their family, and stay beyond 100 feet from them at all times;

    g.    She will not post any nude images or video of Delegate S.P., J.B.S., and family;

    h.    She will not publish any nude images or video of any other persons without prior permission of probation; and

    i.    She will delete all sexual and/or graphic images of S.P., J.B.S., and their family, including, but not limited to, from any digital devices, online accounts, or otherwise in his possession, custody, or control.

25. Moreover, given the defendant's integral role and her untruthfulness with the Grand Jury, the Government believes that this two-year probationary sentence with a significant period of home confinement is the least-serious punishment that can be imposed.

### 18 U.S.C. §3553(a)(2)(C)- Protect Against Defendant's Future Crimes

26. Defendant Browne-Louis knowingly engaged in criminal behavior and knowing falsehoods and deceit—one after the other – to multiple people, including to the victim, law enforcement and the Grand Jury, over a sustained period of time. While she is in need of personal deterrence, the Government believes the recommended sentence will ensure that the defendant does not engage in this type of malicious and criminal conduct again. Indeed, this

case has changed her life. She lost her job following her arrest, and she has suffered in terms of her employment prospects because of her criminal activity and notoriety from this case. The fines and home-confinement aspect (together with the other conditions of probation) of the defendant's sentence will force the defendant to confront the conduct in which she engaged and provoke thoughtfulness of her role in the execution of this crime.

27. The Government also believes the proposed fines, in particular, are necessary in this case. The Government is not seeking incarceration in large part because of the defendant's family responsibilities, but that does mean this Court should not deter her through other tools, including a fine. The defendant has the financial resources to pay a significant fine, and imposing such a sentence will impose a punishment which will effectuate a sufficient deterrence.

**18 U.S.C. §§ 3553(a)(2)(D); (a)(3) and (a)(6); Defendant's Need for Medical Care, Training, and Treatment; the Kinds of Sentences Available; and Need to Avoid Unwarranted Sentencing Disparities**

28. As noted in the PSR (at p. 13), the defendant is currently being treated for a mental-health issue. For this reason, home confinement is preferable to incarceration and will allow her to have regular access to her known medical provider(s). Government counsel is unaware of 18 U.S.C. § 1030 cases similar to this one -- where the defendant stole nude and sexual images from a protected computer and then digitally distributed those images to harm a candidate for office before an election. The D.C. Code provisions to which the defendant pled guilty were passed in May of 2015, and there are no comparable cases to the conduct here. Thus, the recommended sentence does not create any known sentencing disparity.

**18 U.S.C. §§ 3553(a)(3), (4), (5) and (7) - Sentencing Options Available, the U.S.S.G. Guidelines and Policies, and Restitution for the Victims**

29. The defendant can be lawfully sentenced to prison, community confinement, home confinement, and a fine. She also may be sentenced to a period of probation of not more

than five years for each offense (*see* 18 U.S.C. § 3561(c)(2) and 16 D.C. Code § 710).  The defendant may also be assessed a fine of up to $1,000 for Count One and up to $50,000 (or twice the pecuniary gain or loss of the offense) for Count Five.  As discussed, because of the nature of both counts to which the defendant is pleading, there is no statutory guideline that applies.  The defendant must also be assessed a special assessment ranging from $50 to $250 for Count One and a $50 special assessment for Count Five.  The victims are not seeking restitution in this case.

## VI.     Conclusion

30.     The Government recommends that the Court sentence the defendant to 180 days' incarceration, ESS as to all, and a $1,000 fine for Count One (the D.C. Code conviction) and a sentence of straight Probation and a fine of $25,000for Count Five (the U.S. Code violation).  The Government recommends that the execution of both sentences be suspended in their entirety and that the terms run consecutive to each other, but that the Court impose a period of two years' probation for each count (to run concurrent to each other) and recommends the inclusion of specific conditions (which are discussed in detail *supra*) as part of the terms of probation.  Finally, the Government recommends that the Court reserve the right to sentence the defendant to consecutive terms of imprisonment should the probationary term prove unsuccessful.    In light of all of the factors laid out, the Government contends that this sentence is in the public interest and balances the appropriate sentencing factors.   Importantly, the victims are supportive of the plea and the disposition of this case.

WHEREFORE, based upon the above facts and argument, and the evidence presented to the Court, as well as the information reflected in the Presentence Report and the material contained herein, the United States respectfully requests that the Court accept the defendant's guilty plea, and sentence the defendant as recommended.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By: _____*/s/*_____
YOULI LEE
N.Y. Bar No. 4064028
TEJPAL S. CHAWLA
D.C. Bar No. 464012
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530
 (202) 252-7705 (Lee)
(202) 252-7280 (Chawla)
Youli.lee@usdoj.gov
Tejpal.chawla@usdoj.gov